George Andrews, J.,
delivered the opinion of the Court.
The complainant is the wife of the defendant, James Young, and files the bill in this cause by her next friend, against him and the other defendants, to set aside certain deeds of the complainant’s property, executed by herself and husband.
On the 1st of July, 1853, Wesley Blakemore executed to the complainant, then the wife of James Young, a deed conveying to her certain real estate of great value in Shelby County, to 'hold “to the only proper use and be-hoof of her the said Mary N. Young to her sole and separate use, her heirs and assigns forever.”
The clause above recited is the only one contained in the deed in regard to the vesting in the grantee of a separate estate in the land. The deed was in the usual form, and contained no provisions expressly enlarging or restricting the grantee’s power to convey her estate. The consideration for the conveyance was paid by her husband, James Young.
James Young proceeded to subdivide the said tract of *463 land into lots, and negotiated sales of a considerable number of these lots, which were duly conveyed to the respective purchasers — the complainant joining with her husband in the deeds, which were executed and acknowledged, as required by law in the case of deeds of married women. Complainant and her husband also executed deeds of trust on said property to secure his individual indebtedness, under which the trustee has made sales of portions thereof, and executed conveyances therefor.
The complainant charges, in her bill, that, under the deed to her, she had no power to convey her estate in the land; that she was totally ignorant of her rights when the deeds were made, and has but recently been informed of her rights in the premises. She charges that she had great attachment for her said husband, and unbounded confidence in him, and was easily persuaded by him to do whatever he required; that when he would make sales of said lots, he would require complainant to join with him in the deeds, which she did, as a matter of course, knowing that he expected her to yield implicitly to his wishes. She does not charge any fraud or misrepresentation upon her husband or any of the purchasers, or any coercion or undue influence, except as above stated; and nothing of the kind is proved against any of them. She prays that the several deeds aforesaid may be declared void and cancelled, as clouds upon her title.
The several purchasers answered, asserting the authority of the complainant to make the conveyances in question, and the validity of their respective titles.
*464 The Chancellor made a decree in favor of the complainant, declaring the several deeds executed by the complainant and her husband, to be void, and to be clouds upon the complainant’s title; and decreeing that they be set aside and canceled, and that the complainant be restored to the possession, and have an account óf the rents and profits. From this decree the defendants have appealed to this Court.
It is claimed, in behalf of the complainant, that, as the property in question was conveyed to her separate use, and as the deed to her did not in express terms authorize her to convey her estate, she had no power or authority, in concurrence with her husband or otherwise, to dispose of the property; and that her deeds were therefore void, and that she is entitled to recover the property from the purchasers. Upon the solution of the question thus raised this case depends.
Upon this vexed question of the extent of the power of disposition possessed by a married woman over property conveyed to her separate use, it is useless to enter upon a citation and analysis of adjudged cases outside of our own courts, in the expectation of settling the question upon their authority. It is sufficient to refer to the leading case of Hulme vs. Tenant, and the numerous English and American cases cited in the notes to that case, in 1 Leading Cases in Equity, 394.
The English rule is now well settled that a feme covert may convey or charge as a feme sole, real or personal estate settled to her separate use, unless her power of disposition is restricted or limited by the terms of the settlement. Some of the American cases follow the Eng- *465 list rule. Others hold that the married woman, in regard to her separate estate, is to be regarded as a feme sole no further than is implicitly declared in the instrument creating the estate; and that the creation of the separate estate, is, in itself, a necessary restriction upon her power of disposition, in the absence of such enabling terms. It was said by- Greenlcaf, in Morgan vs. Elam: “I regard this question as being unsettled in this country, and that this Court is under no obligation, from a concurrent course of legal adjudication, to sacrifice principle to precedent.” This remark still holds good in regard to the adjudication of our sister States; and the question must now be decided upon principle, and upon the decisions of our own courts.
A large proportion of the adjudged cases have arisen, not upon conveyances executed by the feme covert, but upon bonds or other obligations or contracts, made or entered into by her, and which it was sought to enforce as charges upon her separate estate. No question as to the effect of such obligations, arises in the present case.
The property now in controversy was conveyed directly to the feme covert, without the intervention of a trustee, and the husband united with the wife in the execution of the conveyances, so that it is not necessary to inquire what the effect might be of a conveyance of separate estate, executed by the married woman, without the concurrence of her trustee, and without joining the husband.
It is not, and can not be now disputed, that the power to convey or charge the separate estate may be conferred by the instrument creating the estate, and that, *466 in like manner, that power of disposition may be restricted by the terms of the settlement. But one class of authorities holds that the power to convey or charge does not exist unless clearly conferred by the terms of the settlement; that in the absence of any expressions indicating a contrary intent, the intention of the grantor or devisor of the separate estate must be taken to be, that the feme covert should have no power of disposition over the estate; while the other class holds' that the power of disposition exists, unless expressly or impliedly limited or restrained; and that, if the grantor or devisor of the estate has used no terms of restriction or limitation, he must be presumed to have intended that no limitation or restriction upon the power should exist.
The leading case in this State, upon this question, is Morgan vs. Elam, 4 Yerg., 375. In that case it appeared that a considerable real and personal estate, the property of the intended wife, had, by marriage settlement, been conveyed to a trustee in trust, to permit Samuel Elam, and his wife, Elizabeth, to have and enjoy the use and profits during their joint lives, and after the death of the husband, if he should die first, to the sole use of the wife, as her absolute estate, and after the death of the wife, if she should die first, to such persons as she, by writing in the nature of a last will, executed before two witnesses, should appoint; and in default of such appointment, then to her right heirs or next of kin; provided that it should be lawful for the trustee, upon the request of the said Elizabeth in writing, to make sale of any part of the said estate, and to invest the proceeds in other property.
*467 After the marriage, Mrs. Elam, wishing to vest the property in her husband., wrote to the trustee to cancel the marriage contract, stating that she was determined to blend her fate with that of her husband. The trustee thereupon cancelled the contract, by cutting out his name as trustee.
Mr. Elam thereafter mortgaged certain of the slaves, included in the marriage contract, to secure his individual creditor, and a bill was filed to subject the slaves, to the payment of the mortgage debt. Mrs. Elam resisted the claim of the complainant, upon the ground that the slaves were her separate property, by virtue of the marriage contract.
The case was very earnestly and ably argued and considered. It was held that the attempted cancellation of the marriage contract was a nullity, and that Mrs. Elam had, by virtue of the contract, a separate estate in the slaves. It was claimed for the complainant, that the letter from Mrs. Elam to the trustee, authorizing the cancellation of the marriage contract, imported a gift from her to her husband of all her property, and that she was not restricted, in disposing of the estate, to the precise mode prescribed in the settlement.
Judges Whyte, Green and Catron delivered separate opinions in the case. Judge Whyte quotes, with approval, the opinion of Chancellor Kent in M. E. Church vs. Jaynes, 3 J. Ch. R., 77, to the effect that "instead of holding that a wife is a feme sole to all intents and purposes, as to her separate property, she ought only to be deemed a feme sole sub modo, or to the extent of the power clearly given by the settlement; that instead of *468 maintaining that she has an absolute power of disposition, unless specially restrained by the instrument, the converse of the proi>osition would be more correct — that ■she has no power but what is specially given, and to be exercised in the mode prescribed, if any there be.” Judge Whyte, however, declined to express a decisive opinion upon this point, and based his decision upon the fact that actual fraud existed in the case, and that if there was any gift from Mrs. Elam to her husband, unfair advantage had been taken of her in obtaining it.
Green, J., in his opinion, states, that, “as by the common law rule, the legal existence of the wife is suspended during the coverture, and she is rendered incapable of making any contract, it would seem to follow that when separate rights and distinct powers are conferred on her by a deed of marriage settlement, such deed should be so construed as to give her none of the powers of a feme sole other than those expressly conferred by it. Upon the whole, I conclude that the farthest the Court can go upon principle, is to ascertain, by a fair construction of the deed, what was the intention of the grantor, and to cause that intention to be carried into effect.” Judge Green then concludes, from a consideration of the terms of the deed of settlement, and particularly from the clause prescribing a particular mode of disposition — “by writing in the nature of a last will”- — that the intention manifest upon the face of the deed was, that Mrs. Elam was to be restricted to the taking of the profits of the estate, and in the disposition of it, to an appointment by writing in the nature of a last will.
Judge Catron says that, at common law, “a married *469 woman has no property or powers, but equity permits her to be exempt from this rule, so far as she stipulates for exemption-; yet the Court can give her no powers beyond those given by the settlement. She acts substantially as an attorney in fact in such case, as she well may in. any other. In either, she must pursue the express authority; all beyond it is void.”
Judge Peck, dissenting, held that the deed of settlement was void for want of' registration, and expressed no opinion upon the point above discussed'. The result was, that the claim of Mrs. Elam to the slaves was sustained against the mortgagee of her husband.
We have cited that case at considerable length because of the care with which it was considered, and because it is a case to which all subsequent decisions in this State upon this subject refer.
It will be observed that the deed of settlement in that case, by prescribing the mode in which Mrs. Elam might dispose of the property, impliedly prohibited a disposition in any other mode. While the three judges who discuss the present question in their opinions, distinctly express the opinion that a married woman, as to her separate property, is not in equity a feme sole, the actual decision is only that where the deed of settlement contains an express or implied restriction upon the power to dispose of the property, the feme covert is bound by that restriction, and a parol gift will not pass her estate.
The next case reported in this State was that of Porter vs. Baldwin, 7 Hum., 175. The bill filed in that case, against the married woman, was taken as confessed by her. It alleged that she had a separate estate, that *470 her husband was insolvent, and that the complainant rented a house to her upon her agreement that he should look to her for the rent from her separate estate, and that she had promised in writing to pay the amount thereof, being $150. The deed of settlement not being before the court, it was held that it must be presumed to vest the separate estate in the married woman without restriction. Green, J., delivering the opinion of the Court, cites Morgan vs. Elam, and says that in that case “the principle is laid down that we' must ascertain by a fair construction of the deed, what was the intention of the grantor, and cause that intention to be carried into effect. Upon this principle the power of alienation is not to be restricted on the one hand alone, to cases where it is expressly conferred, nor on the other hand, does it exist in every case where it is not expressly prohibited ; but the powers of the wife over the property, and the use she may make of it, must depend upon a fair interpretation of the meaning and intention of the settlement. It was held that the “fair interpretation of the intention of the settler,” was, that the separate estate should be available for the support of the married woman, and should be liable in equity for necessaries. It was decreed that the separate estate was liable to the complainant for the satisfaction of his claim.
In Marshall vs. Stephens, 8 Hum., 159, a slave had been conveyed to a trustee to hold for the use, support and maintenance of Mary Stephens, during her life, and at her death, if not disposed of by her previously, either by will or deed of gift, the trustee to convey to her heirs at law. Mary Stephens having conveyed the slave, the *471 Court held that it was essential to the validity of the conveyance that it should bo by deed of gift and not by bill of sale, and the nature of the conveyance not being shown in proof, the court presumed in favor of the bona fide holder of the slave, that the conveyance was by deed of gift; saying that no different proof would be required to establish this fact than would be required if Mary Stephens “were a feme sole, for in executing the power she would be acting as a feme sole.”
In Litton vs. Baldwin, 8 Hum., 209, the same deed of settlement came again under consideration, which was involved in the decision of Porter vs. Baldwin, 7 Hum., but in this case the deed was exhibited. It conveyed property to a trustee in trust for the sole and separate use of the defendant, Mary Baldwin, and gave to her a general power of disposition over it.
Mary Baldwin purchased furniture, and gave therefor her own note with personal security, and the bill in the cause was filed to enforce payment of the note out of her separate estate.
The bill was dismissed, McKinney, J., citing with approval, Morgan vs. Elam, and saying that the married woman “can exercise no authority or control over her separate property, except such as is specially given in the deed, and only in the mode therein prescribed;” that the execution by a married woman, of a promissory note or other contract, without more, is not sufficient to charge her separate estate, and that “to charge the separate estate of a married woman with her contracts or engagements, there must be proof of an express agreement and intention to create such charge.”
*472 No decision was made in this case as to the power of Mrs. Baldwin to convey the property; but in the subsequent case of Hoggart vs. White, 2 Swan, 265, the same deed came again before the Court, and it was held that Mrs. Baldwin had, by the express terms of the deed, power to convey the property, and that a mortgage of a slave, executed by her individually, would be enforced against her.
In Powell vs. Powell, 9 Hum., 477, Judge Turley states that “a feme covert acting with respect to her separate property, is competent to act in all respects as a feme sole. * * * * * * She may deal with it as she chooses; she may sell it, she may give it away to any person,” etc. But the opinion of his Honor does not refer to any Tennessee case, and the decision of this point was not necessary to the decision of the cause then before the Court.
In Cherry vs. Clements, 10 Hum., 554, the question was, whether a married woman, by the mere execution of bills single, jointly with her husband, created any charge upon her separate estate. It was held, citing Litton vs. Baldwin, that “to charge the separate estate of a married woman with her contracts or engagements, there must be proof of an express argreement to create such charge.” No such agreement was proven or alleged in that case, and no conveyance by the feme covert was in question.
In Ware vs. Sharp, 1 Swan, 489, the deed drawn in question, conveyed personal property to a feme covert, with a clear restriction upon her power of disposition to an appointment by deed or will. It was held that *473 “when property is given to a married woman to her separate use, and a mode of disposition prescribed in the instrument creating the estate, the settled law of this Court is, that the feme covert is restricted to the mode of disposition so indicated.”
The next case to be found in our reports is Woodram vs. Kirkpatrick, 2 Swan, 218. In this case ne-groes had been bequeathed to the separate use of the testator’s daughters, Jane Woodrum and Mary Welch.
Jane Woodrum and her husband, by joint bill of sale, conveyed her share of the negroes to Kirkpatrick to secure a debt of the husband, there being no privy examination as to Mrs. Woodrum.
Houston, Special Judge, announcing the opinion of the Court, says: “It is not necessary for us to decide in this ease, whether or not a married woman may convey, by deed, her separate estate in personal property, upon privy examination, when the instrument creating the estate makes no provision for its alienation by her in any manner; or whether, in such case, it can alone be done through the intervention of a Court of Chancery. We expressly reserve that question.” But it was held that the sale to Kirkpatrick was void, for the reason that it was made in consideration of a prior debt due from the husband, and for his benefit, and there-fdre in direct contravention of the terms of the will. It was also held that, whether the feme covert, could convey the slaves by bill of sale with privy examination, without resorting to a Court of Chancery or not, she certainly could not convey without such examination.
In Simmons vs. Kincaid, 5 Sneed, 450, it appears that *474 certain slaves were settled, through the intervention of her husband as trustee, to the separate use of Clarissa Simmons, a feme covert, for life, with remainder to her children. The defendant, Kincaid, assisted in compounding a felony with which the husband of Clarissa Simmons was charged, in consideration of which one of the slaves was conveyed to him, by bill of sale, executed by Clarissa Simmons, her husband, and the three oldest children, only’ one of whom was of age.
The bill was filed by Mrs. Simmons and her children, to set aside the bill of sale, and to recover the slave. Mrs. Simmons died pending the suit, and it was prosecuted to final hearing by her children.
It was held that the conveyance was void for. the illegality of the consideration, and that the children, excluding the one who was of age at the time of the conveyance, were entitled to recover their shares of the slave.
Judge Caruthers, delivering the opinion of the Court, says nothing in regard to the power of Mrs. Simmons to sell, except the following: “She could not make a valid sale of her interest, but by examination in a court of equity; unless that is done, her deed does not bind her ; her husband could pass no title, because he had none, except as express trustee without power to sell, except in the special case provided for in the deed for change of’ investment with her sanction. * * * But even if the husband and wife could have disposed of the life estate of the wife, that is now ended by her death, and the remainder of these complainants must take effect in possession.”
The provisions of the deed of settlement are not stated *475 in tbe report of the case, and it is impossible to tell whether it contained any express restrictions upon the wife’s power of disposition; though from the expressions used in the opinion it seems probable that it may have done so. But as the deed was declared to be void for another reason, and the life estate of the wife was already terminated by her death, no expression of opinion upon this point would seem to have been necessary.
In Starnes vs. Allison, 2 Head, 221, the will by which the separate estate was created contained express and stringent restrictions upon the wife’s power of disposition; and it was held, that she could dispose of the property only in the mode prescribed.
In Campbell vs. Fields, 1 Cold., 416, the settlement was made to the separate use of a married woman, “reserving to her the right to sell any of said slaves that she deem advisable, and to re-in vest the proceeds in other slaves, to be held in the same manner as the above named slaves.” The married woman joined with her husband in executing bills of sale of the slaves, the sole consideration being the discharge of the husband’s indebtedness to the purchaser. It was decided that where property is settled upon a feme covert, with power to dispose of it in a particular mode, or for a specific purpose, she- cannot dispose of it in any other mode or for any other purpose.
In Pooley vs. Webb, 3 Cold., 599, the deed of settlement contained express restrictions upon the power of the married woman to dispose of the separate estate. Pier husband having died, she made a contract to convey; and it was held that the restriction was not operative while *476 she was discovert, and that she could convey a good title.
The foregoing are all the cases to which our attention has been called, decided in this State, and throwing any light upon our present inquiry. As the result of these cases, it may be considered as settled in this State:
1. That the power'of disposition possessed by a feme covert over her separate estate, is determined by the intention of the person granting or devising the estate, to be ascertained by a fair construction of the- deed or will.
2. If the instrument creating the separate estate contains any express or implied restrictions upon the power of disposition, either as to the mode of conveying, or the purpose for which it may be conveyed, she can convey it in no other manner, and for no other purpose.
3. 'Where a general power of disposition is, by the instrument of settlement, expressly conferred upon the feme covert, without restriction or limitation as ’ to mode or purpose, she may convey the estate as a feme sole, by proper instrument of conveyance.
The questions raised and decided in the foregoing cases were, whether a feme covert was to be considered as a feme sole in regard to her separate estate; whether she could convey and charge it as a feme sole; and what terms in the deed or will creating the separate estate, would operate to restrict or enlarge her power of disposition. But none of these cases involve or decide the question of the power of a married woman to dispose o her separate estate in realty, not as a feme sole, but as a feme covert, by deed executed jointly with her husband and privily acknowledged under the statute.
*477 The question involved in the present case is not whether the feme covert may convey her separate estate as a feme sole, for she has not, in this instance, assumed to do so. But she has executed conveyances jointly with her husband, and her privy examination and acknowledgment have been, as is conceded, duly and regularly taken and certified, as required by law in the case of married women. And thereupon the question is, whether the deed which conveyed this estate to her separate use, and which is entirely silent as to her power of disposing of that estate, necessarily operates to deprive her of all power to act in regard to that estate, either as a feme covert or as a feme sole. We have no hesitation in holding that it can not have such operation.
It is urged, for the defendants, that a distinction exists as to the power of a married woman, to dispose of her separate estate between cases where that estate consists in personalty, and where it consists of real estate. It is not, in our view, necessary, in this case, to decide that question, and we do not attempt to do so; and our discussion and decision will have application only to cases of the kind now before us, in which the separate estate consists in lands.
The separate estate of a married woman is simply an estate owned solely by her, and from which all marital right of her husband is excluded. The exclusion of the marital right constitutes it a separate estate, and its essential character, as separate estate, is not affected by the enlargement or restriction of the wife’s power of disposition, nor by the fact that it may be conveyed directly *478 to the married woman, instead of to a trustee for her separate use.
It is argued, for the complainant, that the separate estate of a feme eovert is the creature of the courts of equity, and had no existence at common law; that the feme, therefore, could have no common law powers of disposition in regard to it; that all her power of disposition must, therefore, come from the deed of settlement; and if that deed was silent as to her powers, it must follow that she had no power of disposal,, either at common law or under the deed.
This argument is, at least in regard to real estate, a play upon words. It is true, the separate estate of a married woman is the creature of the courts of equity. But the married woman did not derive her power to take and hold real estate from the courts. That power she p°ssesse<l at common law, together with a qualified power to control it; and the courts of equity created the separate estate, not by endowing the wife with a new capacity to hold her lands, but by prohibiting the marital rights of the husband from attaching thereto. Her estate, in the land, existed at common law. The courts of equity excluded the marital rights of the husband from her existing estate; but if they gave her no new powers, they did not take from her any powers which she already possessed in relation to it.
There is some plausability in the proposition that the exclusion of the husband’s marital rights should operate to enlarge the wife’s power of disposition; but it is not easy to perceive how this exclusion of the husband *479 should operate to deprive tbe wife of all power of disposition, either as feme covert• rr as feme sole.
But it is settled that the intention of the grantor or devisor of the separate estate, as ascertained from a fair construction of the instrument, must determine the feme covert’s power of disposal; and it is said that if the deed or will is absolutely silent, as to the power of disposal, we must presume the intention to be that no such power should exist; that, as such estates are created for the benefit and protection of married women, against the husband, the intention must be presumed to make this protection, most effectually, by placing it absolutely beyond the power of either, husband or wife, to dispose of the property.
"We do not think that any such intention is to be presumed in law, or that it usually exists in fact. As the power of disposition usually accompanies the estate, the more natural presumption would be, that if the grantor intends to convey an estate with a restriction upon that power, he would so declare in his deed. The words, “for her separate use,” necessarily imply an intention to exclude the marital rights of the husband; but they have no common nor technical meaning which indicate an intention to restrict the powers of the wife. Probably it would occur to but few, if any persons, not lawyers, that those words could imply any such intention.
At common law th'e wife could convey her real estate, whether legal or equitable, by uniting with her husband to levy a fine, or suffer a common recovery: Hill on Trustees, 405; Lewin on Trustees, 632; 2 Bright, Hus *480 band and Wife, 45; 2 Washb., Real Prop., 181-183; 2 Story Eq. Jur., sec. 974 and note; Cord on Married Women, sec. 405. And when she was permitted, by the courts of equity, to hold such property to her separate use, her power to dispose of it in these modes was not restricted or affected. Our statutes, authorizing the feme covert to convey, by deed, with privy examination, as a substitute for fine and recovery, recognized her right and power to convey, as already existing, and regulated the exercise of that right; but neither gave her a new power of disposition, nor took from her any power of disposition which she already possessed; and the statutory mode of conveyance must be held to extend to every case embraced by the common law mode, for which it was a substitute. No English case, that we are aware of, denies or doubts her power in this respect, where not restricted by the terms of the settlement. The struggle in the English courts was not as to the power of the feme covert, to convey her separate estate in realty, as she might have done at common law. That power seems never to have been questioned or denied. But the question with these courts was, whether, as to her separate estate, the wife had the powers of a feme sole, and could convey her estate by deed, or charge it in favor of creditors with her debts and obligations: 2 Story Eq. Jur., secs. 1391, 1392; Hill on Trustees, 421; English note to Hume vs. Tenant, 1 Lead., Gas. Eq. (402) 507; 1 Washb., Real Prop., 281; Cord on Married Women, sec. 314; Clancy, Husband and Wife, 287, 288; 18 N. Y., 270; 2 Bright, Husband and Wife, 224, sec. 10; 2 Ves. Senr., 191, 192; 1 Ves. Jr., 232.
*481 The power of a married woman to dispose of her separate estate in realty, in the mode provided by law for the conveyance of her general estate, was not in question, and does not appear to have been doubted in the leading cases cited in argument of Ewing vs. Smith, 3 Dess., 417, and Methodist Episcopal Church vs. Jaques, 3 John. Ch. R., 77. The question in one of those cases Avas, Avhether the Avife could make a gift by parol to her husband of her separate estate in personalty; and in the other, whether she could charge her separate estate in favor of a creditor, by the execution of a bond jointly with her husband.
In Pennsylvania, it is held that a married Avoman can not, in the absence of power expressly given to do so, convey her separate estate in lands, even by joining Avith her husband in the conveyance: Wright vs. Brown, 44 Penn. St., 224. Outside of that State, there is no case, in England or America, to which our attention has been called, Avdxich holds that doctrine.
The evil results deplored or dreaded by so many English and American Judges, are those arising, not from the poAArer conceded to a married woman to commy her separate real estate, as she may her real estate generally, in connection with her husband, by fine or by formal conveyance, Avith privy acknowledgment; but from that extension of the rule Avhich tresats the married woman, in respect to her separate estate, as a feme sole, and deprived of all the safeguards which the law throws around her general property, which Avould allow her, not only to convey and incumber her estate Avithout the presence or assent of her husband, but to create a charge *482 upon it by the mere execution of an obligation, ■which is incapable of binding her personally.
The English rule, to that extent, cannot be supported, upon the decisions of this State, or upon principle. The reasons of the law which requires that the husband should join in his wife’s conveyance, and that that conveyance should be duly acknowledged upon privy examination, apply as forcibly to a conveyance of the wife’s separate estate, as to any other. The use of the words necessary to effect a separate use in a deed to a feme, covert do not, without more, necessarily imply that the grantor intends that the feme covert shall convey or charge the land as a feme sole; but neither do they, on the other hand, imply that he intends that she shall be deprived of all the powers of a few- covert.
The conclusion is, that if the deed or will by which land is settled to the separate me of a married woman contains no limitation or restriction, express or implied, upon her power to convey the estate, she may convey it in the same manner that she may convey her general estate — by deed executed jointly with her husband, and privily acknowledged, as required by law; that this power of disposition may be restricted or enlarged by the terms of the settlement, and that in construing these terms, the intention of the settler, as apparent upon a fair construction of’the instrument, must govern.
The deed by which the property now in controversy was conveyed to Mrs. Young, contains no express or implied limitations upon her power to convey the property. She has conveyed it by deeds, executed jointly with her husband, and privily acknowledged and duly certified in *483 the manner provided by law. We have no doubt that the deeds are valid, and sufficient to convey her estate. Her attempt now to avoid them is an attempt to perpetrate a fraud.
The decree of the Chancellor must be reversed, and her bill dismissed, with costs.